UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| James Davidson Enterprises, LLC, | No. 2:21-cv-01091-KJM-DB |
| Plaintiff, | ORDER |
| v. | |
| Bolt Star, LLC, | |
| Defendant. | |

      Plaintiff James Davidson Enterprises, LLC sues defendant Bolt Star, LLC alleging defendant's "Bolt Star templates" product infringes James Davidson's patent.  Bolt Star has moved for partial summary judgment of non-infringement.  On May 12, 2022, the court conducted a hearing in accordance with *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996).  Douglas Sorocco and Evan Talley appeared for James Davidson, and Nathan Brunette and Thomas Wood appeared for Bolt Star.  In this order, based on the entirety of the record before it, the court construes "integrally formed body," the disputed phrase found in each of the independent claims of the patent-in-suit, U.S. Patent No. 7,984,541 (the '541 Patent).

      **For the reasons below, the court denies defendant's partial motion for summary judgment and adopts the court's own construction of "integrally formed body" in '541.**

## I. BACKGROUND

James Davidson filed the '541 Patent in 2005 and the United States Patent and Trademark Office (PTO) approved the patent in mid-2011. Compl. Ex. A (Patent No. 7,984,541, or '541 patent), ECF No. 1-2. The patented device "relates generally to devices for supporting anchor bolts in concrete and . . . to templates for supporting such bolts in a cardboard mold while the concrete inside hardens." *Id.* at 5.[1] The device "comprises an integrally formed body sized for placement over the open top of the mold . . . ." *Id.* Mr. Davidson named the device the Bolt-X® template.[2] Mr. Davidson did not provide a special definition for the term "integrally formed body" in the patent claim specification. *See generally id.*; Opp'n at 13. The contested Bolt Star devices "consist of five separate plastic components (a central hub and four legs) that are molded as separate pieces, sold in a bag of parts, and then later assembled together into a template for the placement of anchor bolts in concrete footing and other foundations." Def.'s Mot. for Partial Summ. J. of Non-Infringement (MSJ) at 6, ECF No. 23. "The hub and arms cannot be used separately and must be assembled for the Bolt Star Product to perform its intended purpose of serving as a template to hold anchor bolts, namely by press-fitting a clip on each arm onto a bracket on the hub and then securing each arm to the hub with a bolt." *Id.* at 19.

James Davidson filed the complaint in June 2021, claiming defendant's "Bolt Star templates" infringe plaintiff's '541 Patent. Compl. ¶¶ 37–77, ECF No. 1. Plaintiff alleges the Bolt Star template meets "each and every limitation of at least Claims 7, 13, 16, and 18 of the '541 Patent," *id.* ¶¶ 38, 41, and therefore Bolt Star is liable for patent infringement under 35 U.S.C. § 271(a),[3] *id.* ¶ 6. Plaintiff also claims Bolt Star is liable for inducement to infringe the

---

[1] When citing page numbers on filings, the court uses the pagination automatically generated by the CM/ECF system.

[2] Plaintiff also alleges defendant infringed its Bolt-X trademark under 15 U.S.C. § 1114(1), but these and other non-patent infringement claims are not at issue in this partial motion for summary judgement. *See* Compl. ¶¶ 78–102.

[3] "Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a).

2

1  '541 patent and contributory infringement of the '541 patent. *Id.* ¶¶ 53–77. Bolt Star moves for
2  summary judgment on plaintiff's patent infringement claims, arguing its product "does not
3  infringe the '541 Patent as a matter of law because it does not have an 'integrally formed body' as
4  each and every claim of the '541 Patent requires." MSJ at 6. The parties have not engaged in any
5  discovery or taken any depositions. The matter is fully briefed. *See* Opp'n, ECF No. 24; Reply,
6  ECF No. 26.

7  The court now construes the disputed phrase, "integrally formed body," found in claims 1,
8  7, 13, 16, and 18 of the '541 Patent. *See generally* '541 patent.

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

The party moving for summary judgment must first show no material fact is in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). It can do so by showing the record establishes facts beyond genuine dispute, or it can show the adverse party "cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The nonmoving must then "establish that there is a genuine issue of material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). Both must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1). The court views the record in the light most favorable to the non-moving party and draws reasonable inferences in that party's favor. *Matsushita*, 475 U.S. at 587–88; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

### B. Claim Construction Generally

The purpose of claim construction is to "determin[e] the meaning and scope of the patent claims asserted to be infringed." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc). "When the parties raise an actual dispute regarding the proper scope

3

1    of these claims, the court, not the jury, must resolve that dispute." *O2 Micro Int'l Ltd. v. Beyond*
2    *Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).  Terms contained in claims are
3    "generally given their ordinary and customary meaning." *Vitronics Corp. v. Conceptronic, Inc.*,
4    90 F.3d 1576, 1582 (Fed. Cir. 1996).  In construing a patent claim, a court starts with the intrinsic
5    evidence of record, consisting of the claim language, the patent specification, and the prosecution
6    history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313–14 (Fed. Cir. 2005) (en banc).

       "The appropriate starting point . . . is always with the language of the asserted claim itself." *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention . . . ." *Phillips*, 415 F.3d at 1312. "There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

       "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313.  The specification "is always highly relevant" and "[u]sually . . . dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582.  "However, claims are not to be interpreted by adding limitations appearing only in the specification." *Id.*  If in evidence, the court may also consider the patent's prosecution history before the U.S. PTO, which "can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Phillips,* 415 F.3d at 1317.

       "[O]n occasion, it is appropriate to rely on extrinsic evidence regarding the relevant scientific principles, the meaning of technical terms, and the state of the art at the time the patent issued." *Am. Honda Motor Co. v. Coast Distribution Sys., Inc.*, 609 F. Supp. 2d 1032, 1036

(N.D. Cal. 2009) (citations omitted).  However, all extrinsic evidence should be evaluated in light of the intrinsic evidence.  *Phillips*, 415 F.3d at 1319.

### III.   ANALYSIS

#### A.   Claim Construction

The parties dispute the term "integrally formed body," which implicates independent claims 1, 7, 13, 16, and 18 of the '541 patent.  To resolve this dispute, the court considers the claim language and the patent specification before addressing the prosecution history.[4]

##### 1.   Claim Language and Patent Specification

"Claim language generally carries the ordinary meaning of the words in their normal usage in the field of the invention." *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327 F.3d 1364, 1367 (Fed. Cir. 2003).  "In some cases, the ordinary meaning of claim language . . . may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. "However, in many cases, the meaning of a claim term as understood by persons of skill in the art is not readily apparent." *O2 Micro Int'l Ltd.*, 521 F.3d at 1360.

Here, the parties dispute the plain meaning of "integrally formed body" as used in claims 1, 7, 13, 16 and 18.  *See generally* MSJ; Opp'n.  All five claims describe the Bolt-X as a

> template comprising: an integrally formed body sized for placement over the open top of the mold, the body having an upper surface and a lower surface,

but claims 16 and 18 addend the following language, respectively:

> wherein the body is formed by a hub and a plurality of arms extending radially from the hub, wherein each arm is generally C-shaped forming a spine with opposing depending edges . . . (claim 16)

and

/////

---

[4] At hearing on the motion, both parties agreed the intrinsic record was dispositive. Because the court finds the same, it does not consider extrinsic evidence.

        wherein the body is formed by a hub and at least three arms
        extending radially from the hub . . . (claim 18).

'541 patent, col. 4, ll. 53–56; *id.*, col. 5, ll. 41–44; *id.*, col. 6, ll. 18–20, 58–65; *id.*, col. 7, ll. 26–30. In Mr. Davidson's detailed description of the preferred embodiment, he concluded, "Changes can be made in the combination and arrangement of the various parts and elements described herein without departing from the spirit and scope of the invention as defined in the following claims." *Id.*, col. 4, ll. 39–42.

     James Davidson's proposed construction for the phrase "integrally formed body" is "one or more components in a fixed relationship." Opp'n at 9. While Mr. Davidson did not define "integrally formed body" in his patent specification, *see generally* '541 patent, his construction would encompass Bolt Star's product, which consists of discrete parts that the user "must" assemble, i.e., fix together, MSJ at 18–19. Bolt Star disagrees, arguing an "integrally formed body" requires a "single unitary structure, not an assembly of separate components." Reply at 6. Accordingly, Bolt Star argues, its product is distinguishable from prior art.

     Neither party suggests there is a an agreed-upon "normal usage in the field of the invention" of "integrally formed body," *see generally*, MSJ; Opp'n, and a quick review of case law indicates "integrally formed," or variations thereof, is an oft-contested term.[5] Indeed, even

---

[5] *See, e.g., Fontem Ventures, B.V. v. NJOY, Inc.*, No. 14-1645, 2015 WL 12766460, at *21 (C.D. Cal. Jan. 29, 2015) (construing "integrally formed" as "formed by parts that make up a whole," not "made of one piece"); *Richmond v. Forever Gifts, Inc.*, No. 14-0583, 2015 WL 3421370, at *15 (N.D. Tex. May 27, 2015) (finding "integrally formed" to mean "made as a single unit," not "made functionally inseparable"); *Eli Lilly & Co. v. Perrigo Co.*, No. 113-851, 2015 WL 13648576, at *8–9 (S.D. Ind. Apr. 13, 2015) (construing "a flexible membrane integrally forming a base and a wall" as "forming a base and wall from a single piece of material"); *STX, LLC v. Epoch Lacrosse, LLC*, No. 14-3511, 2015 WL 4885534, at *8 (D. Md. Aug. 14, 2015) ("integrally formed" is defined as *"*When formed, it is integral," not "formed in the same process and of the same material"); *Storus Corp. v. Restoration Hardware, Inc.*, No. 6-2454, 2007 WL 902553, at *1 (N.D. Cal. Mar. 22, 2007) (" 'Integrally formed' and 'formed integrally' are construed as 'formed with material common to the rest of the unit, and the connection having no mechanical joints.'"); *Burns, Morris & Stewart Ltd. P'ship v. Masonite Int'l Corp.*, 401 F. Supp. 2d 692, 701 (E.D. Tex. 2005) (holding "integrally formed" does not require "permanence," nor that item is "incapable of being easily dismantled," but means "connected together so as to make up a single complete piece or unit, in such a way that the connection becomes part of, or is interconnected with, the piece or unit, as by gluing, an interconnecting joint, or internal screws. The connector is not merely attached to, or wrapped around, the outside surface of the piece or unit.").

6

the Federal Circuit has found "integral" to have no clear, settled definition; it may cover "more tha[n] a unitary construction," *In re Morris*, 127 F.3d 1048, 1055 (Fed. Cir. 1997), but may also be equivalent to "one-piece," *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1341, 1344–45 (Fed. Cir. 2001) (distinguishing "two-piece structure" from "an 'integral' structure"); *see also Advanced Cardiovascular Sys. v. Scimed Life Sys.*, 887 F.2d 1070, 1074 (Fed. Cir. 1989) ("integral" not limited to mean "of one-piece" construction). Because there is no "express definition in [Mr. Davidson's] specification," the claim terms here must be construed in the context of the entire patent. *In re Morris*, 127 F.3d at 1056.

The court finds the context of the patent cuts against Bolt Star's construction for at least two reasons. First, "[c]laims must be interpreted with an eye toward giving effect to all terms in the claim." *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1257 (Fed. Cir. 2010) (internal quotations omitted). Claims 16 and 18 both reference either "a plurality of" or "at least three" arms "extending radially from the [Bolt-X] hub." '541 patent, col. 6, ll. 60–63; *id.* col. 5, ll. 30. Coupled with Mr. Davidson's statement that "[c]hanges can be made in the combination and arrangement of the various parts and elements described herein without departing from the spirit and scope of the invention," *id.*, col. 4, ll. 39–42, the court finds the '541 Patent's use of "integrally formed body" does not preclude James Davidson from, for example, affixing an additional arm to the template.

Second, courts disfavor "[u]nnecessary language" that "may inject ambiguity in the [c]ourt's construction or invite the trier of fact to interpret the court's construction, thus defeating the purpose of claim construction." *Diamond Coating Techs., LLC v. Hyundai Motor Am.*, No. 13-1480, 2014 WL 5698445, at *11 (C.D. Cal. Aug. 25, 2014). If the court were to accept Bolt Star's argument, that an "integrally formed body" requires a "single unitary structure," it would inject unnecessary language and ambiguity into construction of the disputed term. *See* Opp'n at 9. The court declines to adopt this proposed construction, given the term "unitary" does not appear in the claims, the specification, or even in the prosecution history of the '541 patent. *Id.*

Having considered the claim language, and because there is no definition of "integrally formed body" in the claim specification, the court next considers whether Mr. Davidson disavowed "the full scope of a claim term . . . during prosecution." *Thorner*, 669 F.3d at 1365.

### 2.  Prosecution History

"[A] claim receives the meaning it would have to persons in the field of the invention, when read and understood in light of the entire specification and prosecution history." *Fenner Invs., Ltd. v. Cellco P'ship*, 778 F.3d 1320, 1323 (Fed. Cir. 2015). The prosecution history of a patent limits the interpretation of claim terms by excluding any interpretation that the applicant disclaimed during prosecution. *See Southwall Technologies, Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1576 (Fed. Cir. 1995). This allows "[t]he interested public . . . the right to rely on the inventor's statements made during prosecution, without attempting to decipher whether the examiner relied on them, or how much weight they were given." *Fenner Invs., Ltd.*, 778 F.3d at 1325. However, "[t]o balance the importance of public notice and the right of patentees to seek broad patent coverage, [courts have] consistently rejected prosecution statements too vague or ambiguous to qualify as a disavowal of claim scope." *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1325 (Fed. Cir. 2003). Accordingly, the applicant "must clearly and unambiguously express any such surrender of subject matter during prosecution." *Invitrogen Corp.*, 327 F.3d at 1367 (citations omitted). "There is no 'clear and unmistakable' disclaimer if a prosecution argument is subject to more than one reasonable interpretation, one of which is consistent with a proffered meaning of the disputed term." *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1287 (Fed. Cir. 2005). Finally, "an applicant's argument that a prior art reference is distinguishable on a particular ground can serve as a disclaimer of claim scope even if the applicant distinguishes the reference on other grounds as well." *Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1336 (Fed. Cir. 2011) (quoting *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1374 (Fed. Cir. 2007)).

Bolt Star argues, during prosecution of the patent, James Davidson distinguished three prior art references—"Greenwood," "Hulse," and "Hendrix"—cited by the patent examiner "on grounds including that their multi-component body structures were not an 'integrally formed

body.'" MSJ at 13–14; Brunette Decl. Ex. 3 (Appellant's Brief), ECF No. 23-1.  Bolt Star claims this distinguishing estops James Davidson from arguing that the Bolt Star template constitutes an integrally formed body.  MSJ at 14.  James Davidson disagrees, noting the Patent Appeals Board's decision to reverse its initial rejection of Mr. Davidson's claim was not based on the term "integrally formed body."  Opp'n at 19.  Furthermore, James Davidson argues, the prosecution history affirms for the public that devices "formed of multiple parts" and assembled into a "single piece" constitute "integrally formed" bodies.  *Id.* at 20.

The question here is whether James Davidson is estopped from arguing the Bolt Star is an integrally formed body because of "clear and unmistakable" arguments Mr. Davidson advanced during prosecution as to why Greenwood, Hulse, and Hendrix were not integrally formed bodies.  *SanDisk Corp.*, 415 F.3d at 1287.

During claim prosecution, Mr. Davidson first addressed Greenwood, an apparatus to facilitate the "electrical interconnection of flat multiconductor cable" under carpets.  Brunette Decl. Ex. 5 at 76.  Mr. Davidson wrote, in relevant part, "The cable guides 194 and 196 in Greenwood are integrally formed with the base 192 and are structurally separate from the plate 176.  Assuming, without admitting, that the combined base 192 and plate 176 formed notches as recited in claim 1, this combination is not integrally formed and therefore does not anticipate claim 1."  *Id.* Ex. 3 at 32.  Bolt Star argues the public would read this and understand Mr. Davidson to be claiming Greenwood was not integrally formed because its body was composed of separate parts.  Defs.' Supp. Brief at 5, ECF No. 37.  While the court agrees Bolt Star's reading is one "reasonable interpretation," *SanDisk Corp.*, 415 F.3d at 1287, it is not the only one.  Indeed, Mr. Davidson's use of "this combination" is vague, as it could also refer to the provision of Greenwood's patent discussing a pin, which "may be fixedly secured to guide 196 to serve as a pivot for movement of plate 176 into operative position . . . ."  Brunette Decl. Ex. 5 at 78.  Accordingly, this statement does not qualify as a disavowal of the definition plaintiff urges now.

Turning to Hulse, a device for marking cheese, *see id.* Ex. 6 at 82, Mr. Davidson said, "Because the template body of claim 14 is 'integrally formed' the novelty rejection based on

9

1    Hulse et al. must fail. The device in Hulse et al. has several cooperating but structurally separate
2    parts. For example, the arms E and *c* slide in the guide-ways *b* and D, and the guide-ways rotate
3    on the ring C relative to the disk A. For this reason alone, Hulse et al. does not anticipate claim
4    14." *Id.* Ex. 3 at 38. Again, it is not entirely clear Mr. Davidson argued Hulse was not an
5    integrally formed body because it was made of several pieces, or because when assembled and in
6    use, the separate pieces were movable. Both readings are reasonable.

7    Finally, Mr. Davidson argued Hendrix, a center locating device, *see id.* Ex. 7 at 85, "does
8    not show an integrally formed body with arms extending radially from a hub, as recited in claim
9    14. Because the template body of claim 14 is 'integrally formed,' Hendrix does not anticipate
10   claim 14. The device in Hendrix is basically a carpenter's tape with four tapes all coiled on the
11   same reel mechanism. The arms and hub in Hendrix clearly are not integrally formed as recited
12   in claim 14." *Id.* Ex. 3 at 42. Despite his use of the word "clearly," *id.*, Mr. Davidson's
13   distinction is, at best, ambiguous—the public could understand him to be saying Hendrix's device
14   is not integrally formed because the reel mechanism is made of different material than the
15   carpenter's tape, or because the tapes are movable. For this reason, he did not disavow the
16   construction he urges now.

17   Bolt Star argues this case is on all fours with *American Piledriving*, *supra*. MSJ at 17; *see*
18   *also* Reply at 8. In that case, the Federal Circuit relied on claim differentiation and prosecution
19   history in finding the term "integral" meant formed or cast of one piece. This court finds
20   *American Piledriving* distinguishable for two reasons. First, the court in that case considered two
21   claims, one of which recited "an eccentric weight portion *connected* to said cylindrical gear
22   portion," and the second of which depended on the first but recited "said eccentric weight portion
23   is *integral* with said cylindrical gear portion." *Am. Piledriving*, 637 F.3d at 1335 (emphases in
24   original). Because the claims described "the same relationship using different terms, the [correct]
25   assumption is that the term in the dependent claim has a narrower scope." *Id.* Here, "integrally
26   formed body" is not dependent upon a different, broader claim term. *See generally* '541 patent.
27   Second, during reexamination, American Piledriving distinguished the prior art reference by
28   arguing the "two components are 'integral'—i.e., they are simply components of the 'one-piece'

10

counterweight." *Am. Piledriving*, 637 F.3d at 1336.  Accordingly, American Piledriving "clearly and unmistakably" disavowed the construction of "integral" it urged on appeal.  *Id.*  In contrast, Mr. Davidson did not use the term "single piece" or the equivalent during prosecution.  Instead, he relied on vague and somewhat conclusory statements to explain why Greenwood, Hulse, and Hendrix were not integrally formed bodies.

For these reasons, relying on both the claims and on Mr. Davidson's statements during claim prosecution, the court concludes Mr. Davidson's use of "integrally formed body" does not preclude him from arguing Bolt Star's template infringed on the '541 Patent.  Accordingly, it does not grant partial summary judgment on these grounds.[6]

### 3. Construction of "Integrally Formed Body"

Before construing the term "integrally formed body" based on the patent specifications and prosecution history, the court observes the '541 patent also mentions "integrally formed" in the patent abstract, while bearing in mind that Bolt Star challenges the term "integrally formed body," not "integrally formed."  '541 patent at 1.  The abstract is a concise summary of the invention.  The '541 patent abstract provides, in pertinent part, "The template is integrally formed of plastic or some other resilient, light weight material."  *Id.*  This sentence suggests the template must be cast or comprised of one material.  However, the Patent and Trademark Office has published a rule providing that the abstract of the patent "shall not be used for interpreting the scope of the claims."  *See* 37 C.F.R. § 1.72(b).  Nonetheless, courts may "look[ ] to the abstract to determine the scope of the invention." *Hill–Rom Co., Inc. v. Kinetic Concepts, Inc.*, 209 F.3d 1337, 1341 n.*[7] (Fed. Cir. 2000) (collecting cases).

Here, in light of the claim language, patent specification, prosecution history, and abstract, the court construes "integrally formed body" in '541 to mean "one or more components of the same material in a fixed relationship."

---

[6] Because the court does not find partial summary judgment appropriate based on claim construction, it need not consider plaintiff's alternative argument regarding the doctrine of equivalents.

[7] There is only one footnote in the *Hill-Rom* case, and it is designated in the original with an asterisk.

### IV.  CONCLUSION

**For the above reasons, the court denies defendant's motion for partial summary judgment of non-infringement and construes "integrally formed body" to mean "one or more components of the same material in a fixed relationship."**

**A status conference is set for February 23, 2023 at 2:30 PM.  The parties are directed to submit a joint status report seven days before the status conference, advising the court of their positions regarding a schedule for the case going forward.**

This order resolves ECF No. 23.

IT IS SO ORDERED.

DATED:  January 24, 2023.

_____
CHIEF UNITED STATES DISTRICT JUDGE